(May 27, 1921.)

CLINTON SHEEP COMPANY, a Corporation, Respondent, v. C. H. OGEE and CHARLES HULBERT, Appellants.

[198 Pac. 675.]

CLAIM AND DELIVERY—SALE—CONTRACT—INCORPORATION BY REFERENCE —TITLE—DESIGNATION OF ARTICLE—PAYMENT—REPUDIATION OF CONTRACT.

1. A written contract between two parties, which expressly refers to another between one of them and a third party, incorporates provisions of the latter, which are applicable, and necessary to its proper understanding and performance.

2. On a contract for sale of hay, when the price is paid, and the particular hay designated, title passes.

3. An attempted repudiation of the contract by the vendor thereafter is of no effect.

APPEAL from the District Court of the Fourth Judicial District, for Gooding County. Hon. Wm. A. Babcock, Judge.

Publisher's Note.

2. When title passes to buyer on sale of commodities, see notes in 138 Am. St. 905; 9 Ann. Cas. 26; 26 L. R. A., N. S., 1.

Action in claim and delivery. Judgment for plaintiff. *Affirmed.*

James & Ryan, for Appellants.

A vendee cannot maintain an action in claim and delivery against a vendor who refuses to deliver. (23 R. C. L. 1251, sec. 67; *Hamilton v. Gordon,* 22 Or. 557, 30 Pac. 495; Cobbey (1900 ed.) on Replevin, sec. 289, citing *Kerr v. Henderson,* 62 N. J. L. 724, 42 Atl. 1073.)

Claim and delivery will not lie to enforce an unexecuted agreement. (*Saxton v. Breshears,* 21 Ida. 333, 121 Pac. 567; 6 R. C. L. 886, sec. 273, 274; Cobbey on Replevin, sec. 289, citing *Updike v. Henry,* 14 Ill. 378; *Beckwith v. Philleo,* 15 Wis. 223.)

A title based upon an unexecuted contract will not support the writ (of replevin). (*Saxton v. Breshears,* 21 Ida. 333, 121 Pac. 567, *supra;* Cobbey on Replevin, sec. 124, citing *Barrett v. Turner,* 2 Neb. 172.)

Title must have passed before replevin will lie. (*Hamilton v. Gordon,* 22 Or. 557, 30 Pac. 495; *Backhaus v. Buells,* 43 Or. 558, 72 Pac. 976, 73 Pac. 342; *Rosenthal v. Kahn,* 19 Or. 571, 24 Pac. 989; 5 Elliott on Contracts, secs. 5105, 5106; 35 Cyc. 612, 613 (B); 34 Cyc. 1390.)

Where the subject matter of the sale is in bulk and a certain quantity is sold to be taken from a greater quantity, no title passes until the separation is made. (24 R. C. L. 24, sec. 286; 26 L. R. A., N. S., 54, notes; *Callender* v. *McLeod,* 74 Cal. 376, 16 Pac. 194.)

In the case of a contract for the sale of a specified number of tons of hay to be taken out of a stack or mow containing a large amount, title does not pass to the buyer before the segregation and application to the contract of the hay to be taken by the buyer. (26 L. R. A., N. S., 31, notes; 24 R. C. L., sec. 290, p. 28; *Davis v. Hill,* 3 N. H. 382, 14 Am. Dec. 373.)

An agreement as to price is necessary before a contract of sale is executed and the title passes. (26 L. R. A., N. S., 12, notes.)

The purchaser of an unascertained portion of a larger bulk acquires no property in any part until there has been a separation and an appropriation assented to by both vendor and vendee. (26 L. R. A., N. S., 13, col. 2; 24 R. C. L. 26, 27, sec. 288; *Brazier v. Ansley,* 33 N. C. 12, 51 Am. Dec. 408.)

In determining the question as to whether the title has passed, the primary. and first consideration is the intention and understanding of the parties as gathered from the contract and the circumstances surrounding the sale. (*Idaho Implement Co. v. Lambach,* 16 Ida. 497, 101 Pac. 951.)

Evidence of conversations and oral agreements had contemporaneously with the execution of a written agreement is inadmissible to add to or vary the terms of such written agreement. (*Stein v. Fogarty,* 4 Ida. 702, 43 Pac. 681, 3 Jones' Commentaries on Evid., p. 150.)

W. T. Stafford and Frank T. Wyman, for Respondent.

Where the parties to a contract have given it a particular construction, that construction will be adopted by the court, and the subsequent actions of the parties showing the construction they have put upon it are to be looked at by the court, and in some cases may be controlling. (13 C. J. 546, sec. 517.)

Where one paper refers to another for its terms, it is the same as though the words of the one referred to were inserted in the other. (*Hunt v. Capital State Bank,* 12 Ida. 588, 87 Pac. 1129; 13 C. J. 530, sec. 488.)

The court will look at the whole contract, and not take detached parts, and where there are several writings they will be construed together. (*Hunt v. Capital State Bank, supra;* 13 C. J. 528, sec. 487.)

The jury are to consider all conversations had at the time of making the contract, and all subsequent acts tending to carry out the contract. (*Idaho Mercantile Co. v. Kalanquin,* 8 Ida. 101, 66 Pac. 933.)

A party to a valid contract cannot rescind at pleasure and retain the benefits. (*Bowman v. Ayers,* 2 Ida. 465, 21 Pac. 405.)

McCARTHY, J.—May 24, 1912, one Solon Bray, purporting to act for Bray Brothers, made a written agreement with respondent to sell and deliver to it, each year for five years, from 200 to 250 tons of hay at $5 per ton, the hay to be measured on the first of each November. December 17, 1912, he leased for five years, to appellant Ogee, part of his agricultural land for a rental of $1,000, $250 payable on June 1st, and $750 on November 1st of each year. One of the express covenants of the lease, which is signed by Bray and appellant Ogee, is that the latter "will, during the life of this lease, furnish such part of the hay to fill the Clinton contract which Bray Brothers are unable to furnish."

In the years 1913, 1914 and 1915, before the time arrived for the delivery of the hay, Bray asked appellant how much hay he could furnish and appellant designated certain particular stack or stacks. The amounts so designated varied from 100 tons to 214 tons, and seemed to have no particular relation to the amount which the Brays could furnish. The general procedure followed in these years was that Bray and appellant and a representative of respondent would meet at the stacks on November 1st, and measure the hay; respondent would pay Bray $5 per ton, Bray would take out of it the amount of rent owing from appellant, or $750, and pay him the balance. In the year 1916, about a week before November 1st, appellant told Farmer and Painter, two representatives of respondent, that he would not sell his hay for $5 per ton that year but would ask $8. He did not convey this information to Bray. Farmer testifies that a few days before November, 1916, he notified appellant that they would be down to measure the hay on November 1st. This is denied by appellant. Early in the morning of November 1st Farmer, Painter, and Bray went to the farm for the purpose of measuring the hay. When

they arrived appellant was absent and one of his hired men designated the stacks which should be measured, notifying them that one certain stack was reserved by appellant for himself. Appellant arrived just as the last stack was being measured. He made no objection to the selection of the stacks nor to the measurements. One hundred and fifty tons of hay were selected and measured and the representatives of respondent paid Bray at the rate of $5 per ton which would amount to $750, the amount due from appellant for rent. Bray applied the money on the rent. Then appellant raised the objection that he would not sell his hay for $5 per ton and demanded $8. He refused to permit respondent to take the hay or feed it, and attempted to sell it to appellant Hulbert. Respondent brought this action of claim and delivery. Upon the trial, verdict and judgment were in favor of respondent, from which appellants appeal.

· The first point raised by appellants is that the covenant in the lease was a contract between Ogee and Bray, that it was not made expressly for the benefit of respondent within the meaning of C. S., section 5662, and that therefore respondent had no right to sue upon it. It is not necessary to pass upon this point because the action is not one for breach of the executory contract. It is an action in claim and delivery on the theory that title passed. The verdict and judgment must be sustained, if at all, on respondent's theory that the title in the hay passed to Bray and from Bray to respondent. If such was the case respondent would have a right to the possession of the hay, to enforce which the action in claim and delivery was brought. In that connection the provisions of the contract and the covenant in the lease become of importance only in assisting us to determine whether title did pass from appellant to Bray and from Bray to respondent.

Appellants contend that the title could not pass because the price was not fixed as between Bray and Ogee. Unless the matter is covered by an express provision of the contract, it is true, that, when the intent is to sell for a price

to be fixed, and not for the reasonable value, the title will not pass until the price has been fixed. In this case the contract between Bray and respondent fixed the price at $5. The lease clearly refers to this contract. For three years $5 was the price paid and accepted. Reading the contract and the lease together and considering the conduct of the parties and all the circumstances, the $5 provision of the contract and its provisions concerning the time and method of payment were incorporated into the lease by reference. (1 Williston on Contracts, sec. 581 and cases cited.) The instruction of the court that all provisions of the contract were incorporated into the lease was too broad because some of them were not applicable. It appears, however, that this error did not result in any prejudice to appellants.

It is next contended that in the absence of an agreement to the contrary, the title does not pass unless the purchase price is paid or at least tendered. The lease being silent on that point, reference can be had to the contract and the dealings of the parties in carrying it out. The evidence shows that, each year, with one possible exception, they met at the ranch on November 1st, measured the hay, respondent paid Bray, Bray credited appellant Ogee with the rent and paid him the surplus, if any. There is evidence that this was done in November, 1916. Therefore the jury would be justified in concluding that payment was made in accordance with the agreement as construed by the parties. The witness Painter testified that he believed 157 tons were measured. On this ground appellants contend that the hay was not paid for. The complaint alleges that the hay in controversy was 150 tons and this is admitted by the answer. For this reason no point can be made of this testimony of Painter.

The next point is that the appellant Ogee refused to pass the title. It is elementary that claim and delivery does not lie for a mere breach of an executory contract. If the vendor breaks his contract and prevents title from passing the vendee has only his action for damages. In this case

all that remained to pass the title was the segregation and designation of the particular hay. The rule applicable is well expressed as follows: "The principle however, is . . . . that 'the goods must be sufficiently designated that no question can arise as to the thing intended'; that 'the parties do not contemplate an immediate bargain and sale till the specific goods on which their contract is to attach are agreed upon.' " (*Barber v. Andrews*, 29 R. I. 51, 69 Atl. 1, 26 L. R. A., N. S., 1, and note.) See, also, *Idaho Implement Co v. Lambach*, 16 Ida. 497, 101 Pac. 951.

"Whether the sale of the hay was complete or the contract merely executory, under the evidence, was a matter for the jury. Such question is usually one of intent of the parties as gathered from their contract and the situation of the thing sold and the circumstances surrounding the sale." (*Idaho Implement Co. v. Lambach, supra*, p. 510; *Byles v. Colier*, 54 Mich. 1, 19 N. W. 565.)

"If different minds might reach different conclusions as to whether the contract was a completed sale or merely an executory agreement to sell, then the question became one of fact and should have been left to the jury for determination." (*Idaho Implement Co. v. Lambach, supra; Mark P. Miller Milling Co. v. Butterfield-Elder Imp. Co.*, 32 Ida. 265, 181 Pac. 703.)

Appellant Ogee's contract was with Bray. If he stated to a representative of the company a few days before November 1st, in the absence of Bray, that he would not take $5 for the hay that year, as he testified, this would not be sufficient to prevent title passing to Bray. If title passed to Bray, then Bray passed it to respondent. Whether a similar statement made by appellant Ogee on November 1, 1916, prevented the passing of title was a question of fact for the jury. There was evidence that he did not make such a statement until after the hay was designated and measured and settlement made in accordance with the custom of former years. If made at such a time it would not prevent the passing of title. There is substantial evidence to support

the verdict and the court did not err in denying appellants' motion for a directed verdict.

There are many other specifications of error relating to rulings on evidence, instructions given and instructions refused. Over appellants' objection evidence of oral statements and opinion evidence was admitted to show, that, while there were two Brays, yet the expression "Bray Brothers" meant only Solon Bray. This was error, as the contract and lease were not ambiguous in that regard, and it amounted to contradicting a written instrument by parol evidence. Witnesses were permitted to testify to an oral understanding that the hay to be furnished should be grown on the Bray land leased by appellant Ogee. The contract was not ambiguous in that respect. It would have been met by furnishing hay to the amount specified. Such an oral understanding would add to the written agreement. Certainly an oral understanding between respondent and Bray, of which appellant Ogee had no knowledge, would not be binding on him. Yet such errors are not prejudicial for the following reason. The only question in the case was whether title to the 150 tons of hay passed. This depended on what happened November 1, 1916. The only purposes for which the contract was relevant were to show the price and the time and method of payment. The evidence above mentioned, while not relevant, could not prejudice appellants in the determination of the question at issue. Therefore its admission was not reversible error. Appellants requested several instructions as to the meaning of "which Bray Brothers are unable to furnish." If this question had been material, refusal to give some of these instructions would have been reversible error. In view of the evidence it was immaterial.

The law of the case was correctly given in instructions Nos. 8, 9, and 10, in which the court instructed, in substance, that, before title could pass, the 150 tons of hay claimed by the respondent must have been ascertained, designated and segregated from other hay and that this must have occurred before the defendant Ogee repudiated his contract. It is argued that instruction No. 18 is error. Read in connection

with the others just mentioned, we do not think it could have misled the jury. Other errors are specified in connection with other instructions given or refused. We conclude that the instructions as a whole correctly stated the law applicable to the real issues of the case and that any erroneous instructions given were not prejudicial. The judgment is affirmed, costs to respondent.

Rice, C. J., and Dunn and Lee, JJ., concur.

Budge, J., did not sit at the hearing in this case and took no part in the opinion.