**FROSTWOOD DRUGS, INC., Appellant,**

v.

**FISCHER & FRICHTEL CONSTRUCTION CO. et al., Respondents.**

No. 48452.

Supreme Court of Missouri,

Division No. 1.

Dec. 11, 1961.

Motion for Rehearing or to Correct Opinion or to Transfer to Court en Banc Denied Jan. 8, 1962.

Marvin Klamen, Clayton, for plaintiff-appellant; Nouss, Bamburg & Gaebe and Harold B. Bamburg, Clayton, of counsel.

Carroll J. Donohue, Myron Gollub, James W. Singer, III, Husch, Eppenberger, Donohue, Elson & Jones, St. Louis, for defendants-respondents Fischer & Frichtel Const. Co., Fischer & Frichtel, Inc., and James S. Kelly.

Thompson, Mitchell, Douglas & Neill, Joseph P. Logan, Clayton, for defendant-respondent Blair Balk.

COIL, Commissioner.

Frostwood Drugs, Inc. brought an action against Fischer & Frichtel Construction Company, Fischer & Frichtel, Inc., James S. Kelly, and Blair Balk. In the first count Frostwood sought to have specifically performed an alleged agreement between it and Fischer & Frichtel Construction Company to enter into a lease. In the second count Frostwood sought $11,000 actual and $150,000 punitive damages against Kelly and Balk for the alleged reason that each had maliciously persuaded Fischer & Frichtel Construction Company to breach its agreement with Frostwood. At the close of appellant's (plaintiff's) evidence the trial court sustained respondents' motions to dismiss and entered a judgment from which Frostwood has appealed.

Appellant's second amended petition averred that after June 12, 1959, the Fischer & Frichtel companies entered into a written agreement with it "whereby said defendants agreed to lease to plaintiff certain premises in Carrollton Subdivision Shopping Center situated in the City of Bridgeton, St. Louis County, Missouri, for use by plaintiff as a drug store; that a true copy of such agreement is attached hereto as Plaintiff's Exhibit A and incorporated herein by reference.

"3. That plaintiff and defendants Fischer & Frichtel Construction Company and Fischer & Frichtel, Inc. further agreed

that such lease and plaintiff's occupancy of said premises would otherwise be the same as the lease and occupancy by plaintiff under a lease between plaintiff and said defendants of premises at Frostwood Subdivision Shopping Center, a true copy of which lease is attached hereto as Exhibit B and incorporated herein by reference; * * *

"6. That attached hereto as plaintiff's Exhibit C is a draft of a lease embodying the provisions agreed to between plaintiff and defendants Fischer & Frichtel Construction Company and Fischer & Frichtel, Inc."

Respondents, inter alia, asserted the applicable section of the statute of frauds, Section 432.010 RSMo 1959 and V.A.M.S. That section provides in part: "No action shall be brought to charge * * * any person * * * upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them, or any lease thereof, for a longer time than one year, * * * unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized, * * *."

Herbert Sokolik and Eugene Cooper each owned 49 of the 100 shares of Frostwood, Inc. Sokolik had been designated Frostwood's representative as to the matters here in question. Frostwood was lessee in a 1955 lease (Exhibit B mentioned in paragraph 3 of the petition quoted above) wherein Fischer & Frichtel, Inc., had leased to Frostwood a drugstore location in the shopping center of the Frostwood subdivision which had been a project of Fischer & Frichtel Construction Company. Prior to the end of 1955 and at times during 1957 and 1958 representatives of Fischer & Frichtel made known to Sokolik and Cooper that the company intended to construct the Carrollton Subdivision and

shopping center and, in a general way, the plans therefor were discussed. In September 1958 it was suggested that Fischer & Frichtel soon would be ready to discuss with Sokolik a drugstore lease in the Carrollton shopping center. Frostwood, through Sokolik, at all times evidenced a desire to discuss such a lease. Tentative plans for and, in March 1959 some sketches of, Carrollton were shown to Sokolik. At a May 1959 meeting, instituted by Edward Fischer of Fischer & Frichtel and attended by Sokolik, an exterior prospectus of the shopping center and plat of the area were displayed and later Fischer furnished Sokolik a "Blue Book" which depicted the plans for the subdivision and shopping center and indicated the location of the drugstore.

At a meeting late in May or early in June at Frostwood drugstore, attended by representatives of Fischer & Frichtel, Sokolik, and at times Cooper, the matter of a lease for the proposed drugstore area was discussed. Sokolik suggested an area of 4,500 square feet instead of the 6,000 shown, with an arrangement for future expansion; Frostwood's financial statement was requested, and the matter of Frostwood guarantors for any lease which might be executed was mentioned. Mr. Sokolik testified that at that same meeting or at another in early June, Mr. Fischer said "that he would be agreeable to a lease, that of a dollar and seventy-five a square foot, four and a half per cent override; terms of ten years with two five-year options, and that the other terms of the lease would be the same as those at Frostwood" and that Fischer was referring specifically to the Fischer & Frichtel 1955 lease to Frostwood.

A day or two after June 12, 1959, Frostwood received the following letter from Fischer & Frichtel which Sokolik "accepted," as indicated, in July or August of 1959, and thereafter delivered to Mr. Fischer with the request that the requirement for lease guarantors be eliminated:

"June 12, 1959

"Mr. Herb Sokolik
"Frostwood Drugs, Inc.
"8340 Frost Avenue
"Berkeley 21, Missouri

"Dear Sir:

"In reference to the proposed lease to be executed between Frostwood Drugs, Inc. and Fischer & Frichtel Construction Co. for the Carrollton drugstore, this is to advise that we are agreeable to a lease on the following terms:

"1. Area of store to be 4,500 feet, store having an approximate frontage of 60 feet by a depth of 75 feet.

"2. Rental to be $1.75 per square foot.

"3. Term of the lease to be ten years and two consecutive five-year options.

"4. Override to be calculated at 4½% of gross sales, with a minimum annual rental of $1.75 per square foot.

"Provisions for expansion to approximately 6,000 square foot store are to be handled in this manner: An adjoining space containing approximately 1500 square feet is to be leased in such a way that it can be made available to you three years from the date of your occupancy, providing a one-year written notice is given.

"It is our understanding that the group of doctors proposing the hospital clinic in the Carrollton commercial area intend to have a pharmacy. However, in our discussion with them, they have indicated that they would be willing to discuss with the operator of the drug store, some arrangement whereby their pharmacy might be operated by you. However, we do not wish to make this a condition of agreement.

"It is understood that the signature of a third party as 'Guarantor' will be required on the lease. Naturally, this letter of agreement is conditioned on

the acceptability by Fischer & Frichtel Construction Co. of this guarantor.

"This letter is written in order to indicate the earnestness of both parties and by their signature affixed hereto, these intentions are expressed.

"Very truly yours,
"Fischer & Frichtel Construction Co.
"s/ Edward F. Fischer

"Accepted:
"Frostwood Drugs, Inc.
"By Herbert Sokolik"

In August 1959 Fischer told Sokolik that guarantors were unnecessary and that he would forward a letter so stating, but he did not.

During the latter part of October 1959, Sokolik learned that Fischer & Frichtel, Inc. had entered into an "exclusive leasing agreement" with respondent Kelly whereby he was to handle all negotiations for leases in the Carrollton shopping center and was to receive a commission of three per cent of the rents received from the tenants in the buildings to be erected at the shopping center for ten years except "upon leases already secured by Fischer & Frichtel, Inc., namely, Wetterau Grocery Company, Frostwood Drugs, and Telscher Hardware, [upon which the commission] shall be two (2) per cent if these lessees are the final ones selected for these stores." (Bracketed insert ours.)

Later conversations occurred between Kelly and Sokolik in which the June 12 letter was called to Kelly's attention and in December 1959 Kelly inquired whether Sokolik and Cooper would sign as individuals as well as on behalf of the corporation and showed them a different location in the shopping center for the drugstore. About the end of December 1959, Edward Fischer informed Sokolik that Fischer & Frichtel had decided to lease the drugstore premises to respondent Blair Balk, who was then operating the Suburban Pharmacy in the vicinity of the proposed Carrollton. Sokolik insisted that Fischer perform under the June 12 "agreement." Fischer arranged for an appointment for the next day at which a Frostwood financial statement was presented. As a result of the meeting, Fischer advised that they (Fischer & Frichtel) had not yet decided about the lease; that Kelly was able to obtain better leases than they and that Balk had agreed to a more advantageous lease; and that some of Balk's relatives had agreed to post a cash guarantee of $100,000. In any event, Fischer was to call Sokolik about making Frostwood a new offer. Thereafter, Frostwood received this letter, dated January 4, 1960, signed by Edward Fischer for Fischer & Frichtel, Inc.:

"Dear Herb & Gene:

"This is to let you know that, after a great deal of deliberation and discussion, we have decided that we should lease our Carrollton store to Blair-Balk.

"We are sorry to have to inform you of this, but I am sure you will feel that we must have good and valid reasons for doing so.

"With best regards, I am,"

The testimony of Eugene Cooper and of the parents of Sokolik and Cooper does not affect the issue which we deem decisive of this case and no purpose would be served in setting it forth.

The portions of Frostwood's second amended petition quoted above demonstrate that the agreement which appellant sought to have specifically performed consisted not only of the letter dated June 12, 1959, but that the letter was in reality a statement of only part of the terms agreed upon orally. The other terms orally agreed upon were those contained in the existing Frostwood lease which was attached to the petition as Exhibit B. In other words, appellant did not set forth the June 12 letter as though it constituted the sole agreement between the parties and pray for the specific performance thereof. On the contrary, appellant affirmatively alleged that the parties

further agreed (in addition to the letter, Exhibit A attached to the petition) that the lease and appellant's occupancy would *otherwise* be the same as the lease and occupancy of appellant under the Frostwood lease, a copy of which was attached to and incorporated in the petition. Also attached to the petition was Exhibit C, a proposed form for a lease of the Carrollton store, as we understand, as the basis for a suggested decree of specific performance. That lease incorporated not only the written provisions of the June 12 letter but contained also provisions of the Frostwood lease made specifically applicable to the Carrollton property.

At the trial, as heretofore noted, Sokolik, appellant's representative, testified that shortly prior to receipt of the June 12 letter, Fischer had orally agreed as to the price per square foot, the 4½% override, the 10-year term with two 5-year renewal options, and had agreed also "that the other terms of the lease would be the same as those at Frostwood," referring specifically to the Frostwood lease, Exhibit B attached to appellant's petition.

Appellant says in its brief, referring to appellant and Fischer & Frichtel, that "they had an agreement that all the provisions of the Carrollton lease would be the same as in the existing Frostwood lease except as otherwise provided in the agreement of June 12 * * *."

For present purposes we may assume that the June 12 letter contained the essential terms for a proposed lease and that under other circumstances, i. e., unlike those present here, the June 12 letter would constitute a specifically enforceable contract to enter into a lease. (We observe parenthetically, however, that it is not apparent how the "essential" provision for the commencement of the term of the lease may be supplied by anything contained in the letter or by parol in explanation or clarification of anything stated in the letter. See Pfeiffenberger v. Scott's Cleaning Co., Mo.App., 144 S.W.2d 183, 188[3, 4].)

█ Making the assumption stated above, however, we note that there is no language in the June 12 letter which refers to or indicates the existence of the Frostwood lease and there is of necessity nothing on the face of the Frostwood lease, executed in 1955, which refers in any way to the June 12 letter or which does or could indicate that it forms any part of the later (3½ years later) Carrollton transaction. While a writing which consists of several separate documents may satisfy the statute of frauds, the fact that each is a part of the total writing relied upon must be shown either by express references in the documents or must appear from the contents of the documents; and, of course, the fact that two or more writings constitute part of an entire written agreement may not be shown by parol in so far as satisfying the statute of frauds is concerned. Logan v. Waddle, Mo.App., 252 S.W. 469, 470[1–3]. Thus, while it is true that the Frostwood lease (the terms of which appellant alleged and proved were part of its agreement to lease) was in writing, appellant's only evidence that the Frostwood lease constituted a part of the entire agreement was the testimony that there was an oral agreement to incorporate the terms of the Frostwood lease except as otherwise provided in the June 12 letter.

█ It seems apparent then that appellant has alleged and proved that the agreement to enter into a lease was partly written and partly oral. To satisfy the statute of frauds the entire agreement must be in writing and a contract which is partly in writing and partly oral is treated as a verbal contract "in determining whether the contract is within the inhibition of the statute of frauds." 37 C.J.S. Frauds, Statute of § 181, p. 666; Quint v. Kingsbury, Mo.App., 289 S.W. 667, 669[4].

Appellant says that its basic contention is that the letter of June 12 is the contract and that it alone and without more is enforceable; that it is not made indefinite or vague because of its failure to have

mentioned many details usually found in commercial leases, even though there was specific evidence as to agreement on those "details," i. e., the testimony that the agreement was that the lease would contain the provisions stated in the June 12 letter, plus provisions in the existing Frostwood lease.

The case of Smith v. Shell, 82 Mo. 215, involved the sale of corn. The court pointed out that it was not essential to satisfy the statute of frauds that the time and place of the delivery of the merchandise be agreed upon and that, in the absence of such an agreement, a written memorandum evidencing the sale agreement would be construed as a contract to deliver the corn within a reasonable time. But in that case, said the court, the parties had not, as the writing indicated, failed to have mentioned the time of delivery but, on the contrary, the plaintiff testified that the oral contract the parties actually made provided that the corn was to be delivered in ten days or two weeks. The court with respect to the statute of frauds as applied to that situation, said at age 219: "While it might be contrary to public policy, and defeat the very purpose in view in the enactment of the law, to permit a party who signed the contract to prove by parol that there were other stipulations than those contained in the contract; yet, if the party seeking to enforce it, will voluntarily come into court and testify that the contract contained in the written memorandum is not, in fact, the contract made, it would contravene no public policy to refuse him redress for a breach of the contract, either that actually made, or the one evidenced by the written memorandum. The contract actually made cannot be enforced, because not reduced to writing, that contained in the written memorandum should not be, because the party seeking to enforce it voluntarily declares on oath, that it is not the contract the parties made." See also Ringer v. Holtzclaw, 112 Mo. 519, 20 S.W. 800, 802; Soper v. ⸏. G. Strean Inv. Co., Mo.App., 253 S.W. 796, 798[2]; Williston on Contracts, 3d Ed., Vol. IV, § 575, pp. 74–76,

81–86. In Arky v. F. W. Brockman Commission Co., 185 Mo.App. 241, 170 S.W. 353, the court said at page 355: "It is quite clear that the contract sued upon and sought to be enforced was one partly in writing and partly oral. That the oral portion thereof was a subsequent agreement, supplemental to the original contract, if this be true, cannot help plaintiff. Plaintiff declared upon the 'written' contract as modified by the alleged oral agreement. Under plaintiff's theory of the case, this, as a matter of pleading, was proper. See Koons v. St. Louis Car Co., 203 Mo. 227, 101 S.W. 49. Nevertheless, plaintiff cannot escape the effect of the well-established rule requiring all of the essential terms and stipulations of the contract sued upon to be evidenced by the memorandum offered to satisfy the statute."

■ Present appellant may not allege in its petition and thereafter come into court and offer the testimony of its authorized representative that the contract evidenced by the written memorandum was not the contract actually made but that an oral contract was actually entered into which contained the provisions stated in the letter of June 12 plus certain provisions in an existing lease, and obtain relief in the face of the applicable provisions of the statute of frauds. That is because the contract which the pleadings and the evidence show was actually made cannot be enforced because all of its essential terms were not in writing, and the letter of June 12 may not be enforced because appellant's representative testified that it was not the contract the parties actually made.

The Frostwood lease, attached to and incorporated in plaintiff's petition, the provisions of which were alleged to have constituted terms of the agreement to lease, contained more than twenty matters of specific agreement not mentioned in the June 12 letter. While some of them might have been "mere details" covered in usual commercial leases, many of those provisions do not come within that description. In-

deed it is difficult to understand how any lease of a space in a proposed shopping center, executed prior to the completion or perhaps even prior to the beginning of construction of the center, may be said to be a "usual commercial lease." It seems to us that many matters would be dealt with in respect to the prospective occupancy of a space in an uncompleted shopping center which would not be mentioned in the lease of an existing storeroom or office. Be that as it may, however, the fact is that the Frostwood lease dealt with responsibility for such things as the installation of fixtures, the installation of lights in the parking area, proportionate maintenance of the parking area and repair and replacement of parking lot equipment, signs and awnings, maintenance of water pipes, heating apparatus, and air-conditioning equipment; and it included provisions that lessee would save lessor harmless from public liability and that lessor would not permit any other building it controlled within a certain area surrounding Frostwood to be used for a drugstore.

There is a diversity of opinion in the various jurisdictions as to what constitute "essential terms," Williston on Contracts, supra, pp. 76, 77, and while it seems to us that "essential terms" in an agreement to enter into a lease must of practical necessity be determined upon a consideration of all the facts and circumstances of each case, American Mining Co. v. Himrod-Kimball Mines Co., 124 Colo. 186, 235 P.2d 804, 807 [3], certainly there can be no question in this case that many of the recited terms of the Frostwood lease were at least highly important terms of any agreement to enter into a lease of space in the prospective Carrollton shopping center, and were not "mere details" found in usual commercial leases. We need not determine, therefore, whether even "mere details," if the parties intended that those "details" were to be constituent terms of their agreement, must be set forth in the written memorandum either specifically or by reference, because in this case it is clear that many of the terms (of the Frostwood lease) agreed upon by the parties were "essential terms" to be included in the Carrollton lease.

Appellant relies upon Ray v. Wooster, Mo., 270 S.W.2d 743, to sustain its contention that the failure to include the terms of the Frostwood lease, either specifically or by reference, did not make the letter of June 12 incomplete because, says appellant, it contained the essential elements of the agreement to enter into a lease. (We have assumed that the letter contained the essential elements of *an* agreement to enter into a lease but we have pointed out that the letter did not contain the essential elements of *the* agreement actually made.) In the Wooster case the contention was that the written agreement there (for the sale of a farm, livestock, and farm implements) was incomplete and unenforceable because it made no reference to such matters as whether an abstract was to be furnished and, if so, who was to pay for it, how long would be allowed for examination of the abstract, what tax adjustments would be made, what the arrangement was as to forfeiture of earnest money or for the transfer of registration papers on cattle, etc. The court, with respect to that contention, said that all essential elements of a contract of the character and sort to be there enforced were present in the written memorandum, and that " * * * while it is true that the parties failed to agree as to the several matters hereinbefore mentioned as relied on by respondents, such failure does not preclude a court of equity in granting the relief of specific performance. The parties themselves should be permitted to determine the terms of the contract, and the court should enforce the agreement if it contains the essential elements hereinbefore mentioned. The fact that the parties did not go further and contract with reference to every possible contingency which might arise with respect to the transaction did not render the contract incomplete." 270 S.W.2d 752.

Aside from the fact that the court was there dealing with omitted "details" and not

with omitted "essential matters," it is clear that the above-quoted portion of the opinion is not applicable to the present fact situation. That is because the parties in the Wooster case did *not* contract with reference to the omitted matters, while the parties in the present case orally contracted with respect to matters which were omitted from the writing relied upon.

We are of the view that the trial chancellor correctly denied appellant specific performance as prayed.

As we have heretofore noted, count 2 of the petition alleged that James Kelly and Blair Balk each, with full knowledge of the existence of "said contract," had maliciously persuaded Fischer & Frichtel to repudiate the "said contract" with plaintiff and induced Fischer & Frichtel to negotiate a contract with and to lease the drugstore to Blair Balk. Frostwood also alleged in count 2 that as a direct consequence of the aforestated acts of Kelly and Balk, it "was required to employ attorneys to bring an action to compel the other defendants to carry out their lease agreement with plaintiff and incur other expenses in connection with the prosecution of said action all to plaintiff's damage in the reasonable amount of $11,000," for which amount it prayed judgment and further alleged that the averred acts were wrongful and malicious and asked punitive damages in the sum of $150,000.

We have held that appellant's evidence demonstrated that the June 12 letter relied on as the "said contract" was not *the* contract actually entered into for the reason that appellant had averred and had adduced evidence to the effect that the contract to lease was in fact oral and the letter stated only part of its essential terms. The trial chancellor, upon the suggestion of appellant's attorney and over the objection of the attorney for respondent Kelly, indicated that he would order a separate hearing on the question of damages in the event that such became necessary. No separate hearing was held and no evidence was adduced by plaintiff on the question of damages. Apparently that situation exists on the theory that inasmuch as the view of the trial chancellor was that the June 12 letter did not constitute a contract Kelly and Balk could not have induced Fischer & Frichtel to breach it. We have held that the June 12 letter relied upon was not *the* contract and was not enforceable. Inasmuch as appellant requested and has acquiesced in procedure which made the matter of damages under count 2 depend entirely upon the answer to the question whether it could obtain specific performance of the June 12 letter, we are of the view that no further question on damages is before us.

The judgment is affirmed.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.