MABEL YOUNG, Plaintiff-Appellee *v.*
NORTON B. McQUERREY, Defendant-Appellant

No. 5051.

Aᴘʀɪʟ 11, 1973

Rɪᴄʜᴀʀᴅsᴏɴ, C.J., Mᴀʀᴜᴍᴏᴛᴏ, Aʙᴇ, Lᴇᴠɪɴsᴏɴ,
JJ., ᴀɴᴅ Cɪʀᴄᴜɪᴛ Jᴜᴅɢᴇ Cʜᴀɴɢ ɪɴ Pʟᴀᴄᴇ
ᴏꜰ Kᴏʙᴀʏᴀsʜɪ, J., DɪsQᴜᴀʟɪꜰɪᴇᴅ

OPINION OF THE COURT BY MARUMOTO, J.

This is an appeal by defendant from a circuit court judgment in favor of plaintiff, directing the former to convey to the latter 40 acres of land in California described in an unsigned document mentioned below, in specific performance of the undertaking of the former in a signed document which states the acreage of the land to be conveyed but otherwise contains no description of such land.

Defendant has raised numerous issues here in his quest for reversal. However, for the disposal of this appeal, only one issue requires our consideration. That issue is the sufficiency of the documents in evidence to

satisfy the provision of our statute of frauds governing contracts relating to sales of lands.

HRS § 656-1 (4) provides that no action shall be brought or maintained upon any contract for the sale of lands unless the contract, or some memorandum or note thereof, is in writing, and is signed by the party to be charged therewith.

The documents in evidence pertinent to the issue stated above are the following:

(1) draft of deed, partly printed and partly type-written, dated July 12, 1968, providing for conveyance by defendant to plaintiff, and describing the land to be conveyed as "40 acres more or less, being in the east one-half of the east one-half of the southwest quarter of Section 3, Township 7 North, Range 6 West, San Bernardino Base and Meridian in the County of San Bernardino, State of California, SUBJECT TO trust deeds of record," presented by plaintiff to defendant for the latter's signature but not signed by defendant; and

(2) handwritten memorandum, dated September 10, 1968, bearing defendant's signature, and worded as follows: "I am willing to deed Mrs. Young subject to California Laws approval. If this cannot be done, I will deed her 40 acres with Mrs. Young paying back taxes and her portortinate [sic] Balance of Mtg."

The circuit court decided this case in favor of plaintiff by considering the two documents, and reading into the signed memorandum the description of the land in the unsigned deed. It erred in doing so.

In *Glockner* v. *Town*, 42 Haw. 485, 487 (1958), in rejecting a contention that the provisions of a writing not signed by the defendant may be read into a check for $100 signed by him, inasmuch as that amount corres-

ponded to the amount of initial payment mentioned in the unsigned writing, this court stated: "In order that separate writings may be considered together, their relation or connection with each other must appear on their face. The writings must contain either an express reference to each other or the internal evidence of their unity, relation or connection sufficient to make parol evidence of their relation unnecessary."

That statement is in accord with the rule stated in Restatement of Contracts §208 (1932), as follows: "The memorandum may consist of several writings, * * * (b) though one writing only is signed if * * * (iii) it appears from examination of all the writings that the signed writing was signed with reference to the unsigned writings."

In this case, the signed memorandum and the unsigned deed do not contain express reference to each other; and there is nothing in the former which gives an appearance that it was signed with reference to the latter.[1]

A more liberal rule than in *Glockner* was adopted in *Crabtree* v. *Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 110 N.E.2d 551 (1953). In that case, after referring to the rule which requires that the connection between the signed writing and unsigned writings appear from an examination of the papers only, without the aid of parol evidence, the court stated:

"* * * The other position — which has gained increasing support over the years — is that a sufficient connection between the papers is established simply by a reference in them to the same subject matter or transaction. * * * The statute is not pressed 'to the extreme of a literal and rigid logic', * * * and oral testimony is admitted to show the connection between

---

[1] The signed memorandum is inartistically drawn. Its meaning is not clear. The first and second sentences are contradictory, if defendant meant to convey 40 acres of land in California under the second sentence. However, we deem it unnecessary to dwell on the point.

the documents and to establish the acquiescence, of the party to be charged, to the contents of the one unsigned. * * *

"The view last expressed impresses us as the more sound, * * * and we now definitively adopt it, permitting the signed and unsigned writings to be read together, provided that they clearly refer to the same subject matter or transaction." (305 N.Y. 55, 110 N.E. 553)

In *Waterhouse* v. *Capital Investment Co.*, 44 Haw. 235, 245, 353 P.2d 1007, 1014 (1960), this court cited *Crabtree* as indicating a split of authority, but made no decision regarding the adoption or rejection of the rule stated therein as the rule to be applied in this jurisdiction. Similarly, in this case, we make no decision on this point.

Our adoption of the *Crabtree* rule will necessarily mean the rejection of *Glockner*.

The reason that we do not avail this case as a medium for a reconsideration of *Glockner* in the light of *Crabtree* is that, even under the rule stated in the latter, the evidence here is insufficient to permit the consideration of the signed memorandum together with the unsigned deed.

For *Crabtree* to be applicable, two factors must be present: one is that the signed and the unsigned writings must "clearly refer to the same subject matter or transaction"; and the other is that the oral testimony must not only show the connection between the two documents but also "establish the acquiescence, of the party to be charged, to the contents of the one unsigned." *See* Restatement of Contracts 2d, § 208, comment *c* at 240 (Tent. Draft No. 4, 1968). Neither is shown in this case.

The signed memorandum in this case merely mentions 40 acres, and contains no information by which the 40 acres mentioned therein may be identified. At the

time defendant signed the memorandum, he owned 320 acres of land in Antelope Valley, California, from which the 40 acres described in the unsigned deed were carved out. The only common element in the signed memorandum and the unsigned memorandum is the reference to 40 acres. We do not think that it can be said from that fact alone that the two writings clearly referred to the same subject matter or transaction.

Nor is there any evidence to establish the defendant's acquiescence to the contents of the unsigned deed.

At the trial, three witnesses testified to the events which transpired at the time defendant signed the memorandum. The witnesses were defendant, plaintiff, and Dr. Wonsik You.

Defendant's testimony was narrowed down to a point where defendant admitted that he agreed to convey to plaintiff 40 acres out of the 320 acres he owned in Antelope Valley, but it was not narrowed down to the 40 acres described in the unsigned deed.

Plaintiff and Dr. You also testified that defendant agreed to convey 40 acres in Antelope Valley, but neither of them pinpointed the testimony to the 40 acres described in the deed.

Both plaintiff and Dr. You testified that defendant refused repeated requests for the signing of the deed.

There is another significant difference between *Crabtree* and this case. In *Crabtree,* the unsigned memorandum was prepared by the personal secretary of the president of the defendant corporation upon the direction of the president. In this case, plaintiff had the draft of the deed prepared by her attorney and presented it to defendant for his signature. Insofar as the record is concerned, the selection of the 40 acres described in the deed was made unilaterally by plaintiff. There is no evidence whatsoever to show that there was prior discussion between plaintiff and defendant regarding the 40 acres described in the deed.

*Solin Lee Chu* v. *Ling Sun Chu,* 193 N.Y.S.2d 859 (1959), is apposite on the point. It is stated in that case, at page 860:

> "The letter written by the defendant is insufficient to take the agreement out of the Statute as it does not contain all the essential terms of the agreement as pleaded and upon which the plaintiff relief (Crabtree v. Elizabeth Arden Sales Corporation, 305 N.Y. 48, 110 N.E.2d 551). Nor may the plaintiff rely upon the unexecuted document to supply the missing terms. Unlike the situation in the Crabtree case (supra) the document here offered was not prepared by the defendant or at his instance. On the contrary it was prepared by the plaintiff's attorney and offered to the defendant for signature but he refused to sign. In the Crabtree case all of the writings relied upon — which when taken together contained all of the essential terms of the agreement — were documents of the defendant and prepared by the defendant. To permit the unsigned document prepared by the plaintiff to serve as a portion of the requisite memorandum would open the door to evils the Statute of Frauds was designed to avoid."

To the same effect is *Brause* v. *Goldman,* 199 N.Y.S. 606 (1960), wherein the court stated at page 613:

> "The case of Crabtree v. Elizabeth Arden Sales Corp., 305 N.Y. 48, 110 N.E.2d 551, is urged upon us as supporting the proposition that the lease, even though unsigned by the parties, may be considered together with signed writings referring to the same transaction to show acquiescence by the party to be charged in its terms—an acquiescence allegedly sufficient to satisfy the Statute of Frauds. * * * It should be noted, however, that in the Crabtree case the supplemental and unsigned writing was a document prepared by the party to be charged evidencing his assent

to the terms. An entirely different situation is presented where, as here, the plaintiff himself has prepared the supplemental writing, unsigned by the defendant, and offers it in satisfaction of the statute. Where the writing has been prepared by one other than the party to be charged, there is no assurance that the document represents an accurate rendering of a mutually agreed upon understanding rather than one party's latest round of proposals in the negotiation process."

Accordingly, we hold that the documents in evidence in this case were insufficient to satisfy the requirement in HRS § 656-1 (4) for a written memorandum signed by the party to be charged with the contract, and that the circuit court erred in entering the judgment appealed from.

We may also state that, although our discussion of the statute of frauds is sufficient to dispose of this appeal, the record here contains nothing that will entitle plaintiff to any equitable relief, besides the relief rejected herein. This is not a case of fraud. Plaintiff has not charged defendant with fraud. Nor is it a case in which defendant was unjustly enriched at the expense of plaintiff or in which plaintiff suffered a loss on account of some false representation made by defendant. At most, it is a case in which plaintiff was disappointed in not making the profit she anticipated from her understanding of the statements made by defendant in soliciting her investment in a real estate venture.

The record establishes that, at defendant's solicitation, plaintiff purchased for $9,000 a portion of the interest of a withdrawing limited partner in a real estate venture, which had cost the limited partner $5,625; that defendant paid the $9,000 to the withdrawing limited partner, who, consequently, realized a profit of $3,375, but defendant did not profit from the transaction; that, in the liquidation and final settlement of the limited

partnership, plaintiff received $5,625 as return of capital, plus 65 percent profit thereon in the sum of $3,656.25, or a total of $9,281.25, thus realizing only a nominal profit of $281.25 upon the purchase of the limited partnership interest, instead of a considerably greater profit which she anticipated; and that the controversy between plaintiff and defendant is centered upon a claim asserted by plaintiff, and denied by defendant, that defendant admitted making a mistake in paying the above mentioned profit of $3,375 to the withdrawing limited partner and undertook to recover 70 percent of such amount for plaintiff.

Reversed.

*Carroll S. Taylor* (*William H. Dodd* with him on the briefs, *Chun, Kerr & Dodd* of counsel) for defendant-appellant.

*Reuben S. F. Wong* (*Walter G. Chuck* and *Henry I. Kuba* with him on the brief, *Chuck & Fujiyama* of counsel) for plaintiff-appellee.