578 P.2d 1082

**Howard E. RUSSELL and Cora A. Russell, husband and wife, Plaintiffs-Appellants,**

v.

**John R. RUSSELL and Gertrude Russell, husband and wife, Defendants-Respondents.**

**No. 12232.**

Supreme Court of Idaho.

May 9, 1978.

Lary C. Walker, of Walker & Sanders, Weiser, for plaintiffs-appellants.

Iver J. Longeteig, of Runft & Longeteig, Boise, for defendants-respondents.

DONALDSON, Justice.

Howard Russell (hereafter seller), the plaintiff-appellant in this suit, owns a 200-acre farm near Emmett. He listed this farm under a sales agency contract with Baldwin Realty of Boise, also a plaintiff in this action. John Russell (hereafter buyer), the defendant-respondent (no relation), expressed an interest in purchasing the farm and visited and inspected the property several times. On Wednesday, May 29, 1974, both parties signed an earnest money agreement providing that John would buy the property for $191,000. The document enumerated $10,000 as earnest money and a partial payment, assumption of an $84,000 loan, $85,000 to be financed by a loan company, and $12,000 to be paid upon the happening of a later event. Buyer gave seller a check for $5,000 and a personal note for $5,000 to cover the earnest money required. The earnest money agreement also provided that possession was to be delivered 30 days after closing of the sale.

The earnest money agreement gave the following description of the property involved: "Full legal attached of Howard Russell Property located on Beacon Road, Emmett, Idaho consisting of approx. 200 acres." A legal description of the farm was placed in the broker's file with the earnest money agreement.

On Sunday, four days after the signing, buyer approached seller and requested that possession be delivered immediately. Seller refused. On Monday, the real estate broker presented the earnest money check, but it was dishonored for insufficient funds. Buyer testified that he made sure the check would "bounce" when seller refused to deliver immediate possession.

Seller and Baldwin Realty brought the present suit for the $10,000 earnest money as well as lost commission, damages and attorney's fees. At trial, buyer contended the earnest money agreement did not embody what was orally agreed to by the parties. Buyer testified that he was to take over the milking of the cows immediately.

Seller testified that he grossed about $5,000 a month from the milking operation

and that he was not going to give up that money until he had certain assurances that the sale would be closed.

Over seller's objection, evidence was received to show attempts made by counsel to get the parties back together.

The trial court ruled for buyer (the defendant) and directed defense counsel to prepare findings of fact and conclusions of law which basically were:

(1) The earnest money agreement did not contain a legal description of the property, and therefore was invalid,

(2) the contract was not carried out and the parties entered into negotiations to resolve their problems, and

(3) these negotiations constituted a mutual abandonment of the earnest money agreement.

Seller[1] appeals to this Court, raising two issues:

(1) whether the trial court erred in ruling the earnest money agreement invalid for lack of a legal description, and

(2) whether the trial court erred in ruling that the negotiations constituted a mutual abandonment of the earnest money agreement.

### I

At trial, buyer argued that the earnest money agreement was invalid because it did not contain a sufficient legal description of the farm and by reason thereof the statute of frauds was violated and parol evidence was not admissible. The trial court agreed and held that the earnest money agreement lacked a sufficient legal description and was therefore invalid. The trial court refused to admit into evidence the legal description because that description was on a sheet of paper which contained a description of some other land not involved in this transaction.

In his brief, buyer supports the trial court's finding that the earnest money agreement is inadequate because it does not describe "the property in sufficient detail to satisfy the statute of frauds." I.C. § 9–503.[2]

In *Murphy v. Livesay*, 34 Idaho 793, 796, 197 P. 536 (1921), this Court said: "[I]n order to comply with the requirements of the statute the contract must state the essential terms thereof, one of which is the description of the property involved . . ."

■ However, this is not to say the statute of frauds invalidates all contracts with imperfect legal descriptions. "The statute is not pressed 'to the extreme of a literal and rigid logic.'" *Jennings v. Ruidoso Racing Association*, 79 N.M. 144, 441 P.2d 42, 44 (1968). (citation omitted)

■ The earnest money agreement referred to the property involved as: "Howard Russell property located on Beacon Road, Emmett, Idaho consisting of approx. 200 acres." Further, it provided a "Full legal" description was attached. An accurate legal description accompanied the earnest money agreement, albeit on a separate sheet of paper which was not stapled or otherwise physically attached.

It is not contended that buyer was in any way confused as to the boundaries or location of the farm. In fact buyer had been shown the farm several times. Buyer's only reason for raising a question about the legal description was an attempt to absolve himself of a contract he had signed.

"The statute of frauds is intended to protect against fraud; it is not intended as an escape route for persons seeking to avoid obligations undertaken by or imposed upon them." *Keirsey v. Hirsch*, 58 N.M. 18, 265 P.2d 346, 352, 43 A.L.R.2d 929, 935 (1953).

---

1. Baldwin Realty did not appeal the district court judgment and has not continued as a party in this law suit.

2. 9–503. Transfers of real property to be in writing.—No estate or interest in real property, other than for leases for a term not exceeding one year, nor any trust or power over or con-

cerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing.

Further, it would be pure semantics to say that although the legal description was referred to in the earnest money agreement, it was not part of the contract because it was not attached by a staple. Attachment does not require any specific physical act. The legal description was always with the earnest money agreement. The broker testified that the legal description was kept side by side with the earnest money agreement in the broker's files. It was clear that no other description was intended by the earnest money agreement.

It was error for the trial court to hold the earnest money agreement invalid for lack of a sufficient legal description. The earnest money agreement had a legal description on another sheet of paper. No magic form of physical attachment is required here where the legal description was alluded to in the earnest money agreement and was always together with the earnest money agreement.

## II

The trial court received as evidence a series of four letters between counsel constituting attempts to get the parties back together. Although the trial court had decided the earnest money agreement was invalid, it also ruled these settlement negotiations constituted a mutual abandonment, relying on *Jensen v. Chandler*, 77 Idaho 303, 291 P.2d 1116 (1955). The trial court based this ruling on "offers and counter-offers were made and rejected, entirely different from the terms of the original agreement."

■ A contract may be mutually abandoned. The question here is whether seller intended to abandon the earnest money agreement when he tried to negotiate a settlement. The facts do not indicate such intent. Seller's testimony shows that he thought he had a valid contract.

Of the four letters received as evidence constituting the negotiations, three of these letters were from buyer's attorney, making various offers of lesser amounts to purchase the farm. The fourth letter was from sell-

er's attorney and was sent to buyer. This letter clearly indicates that seller considered the earnest money agreement binding and fully expected buyer to "live up to" it. No abandonment can be found on these facts. *Jensen id.*, allows for abandonment of a contract where "the acts of one party inconsistent with its existence are acquiesced in by the other party." *Id.* at 307, 291 P.2d at 1118. No such acquiescence was shown here. The ruling of abandonment by the trial court is not supported by substantial or competent evidence.

## III

The trial court erred in finding the contract invalid and abandoned. We reverse and remand for new trial. Costs to appellants.

SHEPARD, C. J., and BAKES, J., concur.

BISTLINE, Justice, concurring specially.

On the understanding that the majority opinion is confined to a simple holding that the failure to physically "attach" to the body of the earnest money agreement the sheet of paper setting forth the legal description did not vitiate the agreement, I concur.

To my mind, cases cited by Justice McFadden in his dissent seem to support the result reached by Justice Donaldson. Those cases stand for the proposition that a separate writing can be incorporated into a contract by reference, but that the relation or connection between the two writings must appear *facially, i. e.,* that resort to parol evidence is not permissible to establish such a relation or connection. Thus, if the language "full legal attached" had not been a part of the earnest money agreement reference to "Howard Russell property located on Beacon Road, Emmett, Idaho, consisting of approx. 200 acres," my vote would have been with Justice McFadden. As the dissent intimates, this Court should not enforce "incomplete and informal land sale contracts."[1] *On its face*, however, "full legal attached" establishes that there

1. The dissent's statement I presume is made in reliance on *Matheson v. Harris*, 96 Idaho 759, 536 P.2d 754 (1975), *Luke v. Conrad*, 96 Idaho 221, 526 P.2d 181 (1974), and *Suchan v. Rutherford*, 90 Idaho 288, 410 P.2d 434 (1966).

is another sheet of paper which supplies the complete legal description. That sheet of paper, as the majority observes, "accompanied" the earnest money agreement at all times pertinent to this case.

The dissent argues, nonetheless, that the legal description was "insufficiently incorporated" because it was not physically attached to the earnest money agreement itself. Though the dissent does not specify what type of physical attachment would be required in order to gain validity, it would hold that, just as the war was lost for the lack of a nail, for the lack of a staple this agreement must fail. Again, the concerns voiced by the dissent are not without merit; "careless use" of earnest money forms opens the door to fraud, and it could be said "to promote litigation." But, if all conceivable fraud is to be precluded, then obviously the best rule on attaching separate papers would be to permit no attaching whatever. As a second best, gluing would be preferable, and many are the form deeds which have been recorded in Idaho with a long legal description over-flap glued on where space on the form did not suffice. However, none of the other familiar methods of attaching—staples, clips, rubber bands, string or simple juxtaposition in an envelope or folder—offer any real guaranty against fraud.

I submit that the prevention of fraud is but one concern. The legal profession, both judges and attorneys, and the real estate profession as well, have long recognized that the tedious work (with the very real possibility of error) of copying a long legal description can be readily avoided by attaching a photocopy. When the entire documentation is found side-by-side in a single folder, as here, a commercial transaction should not be aborted on the grounds that "parol evidence" is necessary in order to point out precisely which document was the one intended for physical attachment.

The Court's ultimate concern, however, is that it be provided with a description which is sufficiently definite to identify the property which forms the subject of the agreement between the parties. A description is sufficiently definite if it evidences the common intent of the parties to deal with re-spect to a particular piece of property. The case of *Allen v. Kitchen*, 16 Idaho 133, 100 P. 1052 (1909), does not require more. The description in that case was defective because, unlike here, there was "no reference to any record or external or extrinsic description from which a complete description could be had." *Id.* at 143, 100 P. at 1055. Indeed, the description was so inadequate that the parol evidence which appellant there sought to introduce was "for the purpose of supplying, completing, and perfecting a description on its face insufficient and incapable of application." *Id.* at 144, 100 P. at 1055. In that case, as the Court observed, even "[t]he name of the city, town or village, and also the county and state" were lacking and would have to have been supplied. *Id.* In short, *Allen v. Kitchen* holds that parol evidence is inadmissible when it is employed for the purpose of "supplying and adding to a description insufficient and void on its face." *Id.* The present case presents no such problem. Here there is no allegation of indefiniteness, uncertainty, confusion or fraud with regard to the subject matter of this earnest money agreement. Under such circumstances, to hold that the agreement is void simply because the legal description was not physically attached thereto, would be to exalt form over substance.

I repeat that my concurrence in the majority opinion is on the sole and narrow ground that the earnest money agreement was not invalid simply because the legal description was not physically attached thereto. On retrial, there are many remaining issues which necessarily need to be determined in resolving the controversy.

McFADDEN, Justice, dissenting.

I dissent from the majority's opinion. My specific point of disagreement is with the holding that the legal description was sufficiently incorporated into the earnest money agreement to be part of it. I would hold that the legal description was not sufficiently incorporated and that, without it, the earnest money agreement is so incomplete as to be unenforceable under Idaho's

statute of frauds relating to transfers of real property interests.[1]

There appears to be no dispute that seller's action is based on the "Earnest Money Agreement" and that seller's rights are determined by that document. Nor can there be any serious disagreement with the proposition that the earnest money agreement is a contract for the sale of realty.[2] Our law is clear that in order to be enforceable, such contracts must meet the requirements of the statute of frauds relating to the transfer of real property interests. *See Schulz v. Hansing*, 36 Idaho 121, 209 P. 727 (1922) (by implication); *Allen v. Kitchen*, 16 Idaho 133, 100 P. 1052 (1909); *Thompson v. Burns*, 15 Idaho 572, 99 P. 111 (1908). Very early this court construed the statute of frauds as requiring that such contracts describe the property being conveyed under the contract. . *Thompson v. Burns, supra; Kurdy v. Rogers*, 10 Idaho 416, 79 P. 195 (1904). Although this court has adopted no highly defined standard for judging the sufficiency of a description in a contract, we have adopted a general standard:

1. I.C. § 9–503 provides:
   No estate or interest in real property, other than for leases for a term not exceeding one year, nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized in writing.

2. First, the agreement provides that the money paid by buyer will be "refunded" if the seller fails to accept buyer's "offer." If the buyer were purchasing an option, the seller would keep the money in any event. Secondly, the agreement provides that the seller may declare a forfeiture of the contract if the buyer "shall fail to promptly perform any covenant  .   .   . and to do all things necessary and prerequisite *to the consummation of this sale.*" If the contract merely gave buyer an option, he would have no obligations: no "covenants" to perform. *Kessler v. Pruitt*, 14 Idaho 175, 93 P. 965 (1908). Thirdly, the agreement provides that the buyer's payments should be retained by the seller as "liquidated damages" ·in case of forfeiture. The liquidated damages clause argues strongly for interpretation of the document as a contract of sale. *E. g., Karr v. Stevens*, 297·

An agreement for the sale of real property must not only be in writing and subscribed by the party to be charged, but the writing must also contain such a description of the property agreed to be sold, either in terms or by reference, that it can be ascertained without resort to parol evidence. Parol evidence may be resorted to for the purpose of identifying the description contained in the writing, with its location upon the ground, but not for the purpose of ascertaining and locating the land about which the particular parties negotiated, and supplying a description thereof which they have omitted from the writing.

*Craig v. Zelian*, 137 Cal. 105, 69 P. 853 (1902) cited with approval in *Allen v. Kitchen, supra*, 16 Idaho at 142, 100 P. 1052.[3]

In the instant case, the earnest money agreement describes the property being conveyed as in Gem County, "Full legal attached of Howard Russell Property located on Beacon Road, Emmett, Idaho consisting of approx. 200 acres." A second sheet apparently accompanying the earnest money agreement (but not attached) contained

S.W. 287 (Tex.Civ.App.1927); *Texlouana Producing & Refining Co. v. Wall*, 257 S.W. 875 (Tex.Com.App.1924). Finally, and perhaps most persuasively, the document contains the words, "SELLER ACCEPTS the foregoing terms and conditions and agrees to sell the above property to Buyer." This statement indicates that the document was more than an offer from the buyer or an option to purchase given by the seller. On the basis of these provisions in the "Earnest Money Agreement," I must conclude that it is a contract for the sale of realty and must have the legal attributes of one in order to be enforceable.

3. Justice Ailshie further noted that "This court has uniformly held that such a contract must speak for itself, and that parol evidence will not be admitted to supply any of its terms." *Allen v. Kitchen, supra*, 16 Idaho at 142, 100 P. at 1055. *Thompson v. Burns, supra; Kurdy v. Rogers, supra.* Cf. *Robison v. Frasier*, 89 Idaho 326, 404 P.2d 877 (1965) (suit for broker's commission; overruled in *Central Idaho Agency v. Turner*, 92 Idaho 306, 442 P.2d 442 (1968)); *Laker Land & Loans v. Nye*, 40 Idaho 793, 237 P. 630 (1925) (suit for broker's commission); *Murphy v. Livesay*, 34 Idaho 793, 197 P. 536 (1921) (suit for broker's commission).

legal descriptions of two farms owned by Russell. The trial court determined that the extra sheet was not properly incorporated into the contract of sale and that, therefore, the only description in the contract was "Howard Russell Property located on Beacon Road, Emmett, Idaho consisting of approx. 200 acres." The court found this description inadequate to satisfy the statute of frauds and the contract therefore unenforceable.

The majority rejects the trial court's holding that the writing containing the legal descriptions was insufficiently incorporated into the main contract. This is where my brethren and I part company.

While a separate writing can be incorporated into a contract by reference, *Clinton Sheep Co. v. Ogee,* 34 Idaho 22, 198 P. 675 (1921), and both writings relied upon to satisfy the statute of frauds, *e. g., Milkovich v. Orr,* 529 P.2d 1382 (Mont.1975); *Laramie Printing Trustees v. Krueger,* 437 P.2d 856 (Wyo.1968), *"their relation or connection with each other must appear on their face.* The writings must contain either an express reference to each other or the internal evidence of their unity, relation or connection sufficient to make parol evidence of their relation unnecessary." *Glockner v. Town,* 42 Haw. 485 (1958) (emphasis supplied); *Young v. McQuerrey,* 54 Haw. 433, 508 P.2d 1051 (1973). Or, as stated by the Missouri Supreme Court:

> While a writing which consists of several separate documents may satisfy the statute of frauds, the fact that each is a part of the total writing relied upon must be shown either by express references in the documents or must appear from the contents of the documents; and, of course, the fact that two or more writings constitute part of an entire written agreement may not be shown by parol in so far as satisfying the statute of frauds is concerned. *Logan v. Waddle,* Mo.App., 252 S.W. 469, 470.

*Frostwood Drugs, Inc. v. Fischer & Frichtel Const. Co.,* 352 S.W.2d 694 (Mo.1961), cited with approval in *Abboud v. Cir Cal Stables,* 190 Neb. 396, 208 N.W.2d 682 (1973). See also, *Herman Bros. Co. v. Wacker,* 96 Neb. 102, 147 N.W. 127 (1914); *Gruss v. Cummins,* 329 S.W.2d 496 (Tex.Civ.App.1959).

In the instant case the earnest money agreement states, "Full legal attached." The record is uncontroverted that nothing was attached. As a result, parol evidence was necessary to show the particular piece of paper the parties intended to attach. Parol evidence was also required to determine which of the descriptions on that piece of paper was the applicable one. Under these circumstances the trial court did not err in ruling that the page of descriptions was not part of the earnest money agreement. I would affirm that ruling as well as the court's conclusion that, without the writing, the earnest money agreement fails to satisfy the statute of frauds. I do not think the rulings below were based on "pure semantics" as the majority asserts. Further, it is irrelevant that "the legal description was kept side by side with the earnest money agreement in the broker's files."

The practical effect of the majority's decision is to condone the continued careless use of forms like this "Earnest Money Agreement," and, indirectly, to promote litigation. I have no doubt that this form properly completed could be a specifically enforceable contract of sale. But improperly completed the document gives no party any clearly defined legal rights and, if recorded, confuses rather than promotes "security of property and titles." *Thompson v. Burns, supra,* 15 Idaho at 597, 99 P. 111. In upholding the instant contract, the majority has decreed that henceforth incomplete and informal land sale contracts may be enforced—but only to the extent determined by litigation.

For these reasons I dissent from the court's opinion.