**In re QUAD–CITIES CONSTRUCTION, INC. Debtor.**

**Quad–Cities Construction, Inc., Plaintiff,**

**v.**

**Advanta Business Services, Corp., f/k/a Advanta Leasing Corp., Defendant.**

**No. 99–20666.**

United States Bankruptcy Court, D. Idaho.

Sept. 1, 2000.

David E. Eash and Irving "Buddy" Paul, Huppin, Ewing, Anderson & Paul, Coeur d'Alene, Idaho, for Plaintiff.

Ford Elsaesser, Elsaesser, Jarzabek, Anderson, Marks & Elliott, Sandpoint, Idaho and Michael L. Temin, Wolf, Block, Schorr, & Solis–Cohen, Philadelphia, Pennsylvania, for Defendant.

## MEMORANDUM OF DECISION

TERRY MYERS, Bankruptcy Judge.

## I. INTRODUCTION

Plaintiff Quad–Cities Construction, Inc., ("Plaintiff") is a chapter 11 debtor in possession. On February 3, 2000, it brought suit against Advanta Business Services ("Defendant") upon several theories. Defendant answered two counts of the Complaint. In regard to the other two counts, Defendant moved the Court for an order of dismissal under Fed.R.Civ.P. 12(b)(6), incorporated by Fed.R.Bankr.P. 7012. The Court granted Defendant's motion as to that portion of the Complaint which pleaded a theory of "negligent misrepresentation" since that cause of action was unavailable to Plaintiff as a matter of applicable Idaho law. The motion was in all other respects taken under advisement. This decision resolves that motion.

## II. BACKGROUND

### A. The Complaint

Plaintiff alleges that, in 1998, it was seeking long-term financing in excess of $4,000,000. It approached an entity known as "LeasX" which, Plaintiff asserts, "committed to providing loans" in such magnitude. Plaintiff contends that LeasX was Defendant's agent.[1]

Plaintiff asserts that Defendant received from Plaintiff over $350,000 in advance payments, taxes and security deposits under this financing commitment. The prayer of the Complaint asks for damages in this amount on the basis of "fraud, conversion and/or negligent misrepresentation." Complaint, at p. 7. It also asks for "direct, incidental, and consequential damages resulting from **breach of contract** in an amount to be proven at trial." *Id.* (emphasis supplied.)

The "contract" which Plaintiff alleges existed and was breached was one by which Defendant agreed to provide financing or credit to Plaintiff. *See, e.g.*, Complaint at paragraphs VIII and X.[2] Plaintiff alleges:

> Defendant, acting on its own and through LeasX, committed to providing loans exceeding $4 million to Plaintiff. Copies of **said** lease **agreements** are attached hereto and incorporated herein as Exhibits "1", "2," and "3."

Complaint, at paragraph VIII. (emphasis supplied)

The first of these "Incorporated agreements" is Exhibit 1, an "equipment lease agreement" between Plaintiff and Defendant concerning a 1992 Caterpillar 950F. This document is signed by both parties, with Ken Wexler signing on December 18, 1998 for Plaintiff. Defendant's execution appears on the document's second page (i.e., the reverse of page one) under the heading "Accepted by Advanta Business Services" and bears the date of January 4, 1999. The agreement provides for a 60 month lease of the described equipment, and appears complete in its terms and conditions regarding the parties' rights and obligations.[3]

---

1. Defendant concedes that, for the purposes of this motion, it must accept the allegation of agency as true. *See* "Reply to Plaintiff's Response to Court's Request for Statement of Case" filed July 10, 2000, at p. 4.

2. There is a lack of clarity and consistency in Plaintiff's characterizations. Most of the time, the asserted "contract" is the agreement to provide $4,000,000 of financing. But at other times, Plaintiff seems to speak of specific lease agreements as the "contracts." For example, compare paragraph XI, and the last sentence of paragraph VIII quoted above, with paragraph X.

3. Defendant does not dispute the existence of the lease contract reflected by Exhibit 1. *See* "Defendant's Answer to Counts II and III of Plaintiff's Complaint." In fact, this contract is the predicate for Advanta's proof of claim in the chapter 11 case, claim no. 62, filed July 27, 1999 in the amount of $137,788:28 as a secured claim. The Debtor in Possession uses the instant Complaint to object to that claim as well as to seek affirmative relief. *See* Fed.R.Bankr.P. 3007.

The second document, Exhibit 2, also purports to be a 60 month equipment lease agreement. It is on a preprinted form document of Defendant, apparently identical to the form used in Exhibit 1. This document refers to an "attached Exhibit A" for a description of the equipment leased. There is no Exhibit A attached. No vendor's name appears on the document. This document was signed by Ken Wexler for Plaintiff, allegedly on December 16, 1998, the same date that appears next to his signature on Exhibit 1. However, this document as attached to the Complaint contains no second page, and there is no indication that this agreement was accepted by or executed by Defendant.

The third document, Exhibit 3, is essentially identical to Exhibit 2. It is a form lease agreement, which also refers to a missing "Exhibit A" for description of the subject equipment. It is lacking the second page as well, and there is no indication that this lease was accepted or executed by Defendant.

### B. The Amended Complaint

Subsequent to the filing of the motion to dismiss, Plaintiff was allowed to amend the Complaint, which now alleges:

> The contract for financing includes, without limitation, a letter dated December 2, 1998, signed by Lou Bories. At said time and place, Mr. Bories was acting as an agent of Defendant Advanta. A copy of said **agreement** is annexed to the Complaint as Exhibit "4".

Complaint, at paragraph X (emphasis supplied.)

Exhibit 4 states on its face that it is a "Commitment Letter" of LeasX to Plaintiff for $4,000,000 of equipment lease financing. But it also specifically states:

> This letter of intent is subject to formal credit approval and commitment and the development of documentation and all other specifics acceptable to LeasX, Inc.

The letter also indicates that the equipment to be financed under the "master lease" was "to be determined." It reflects that monthly payment amounts would be $76,651.79 and payments would be required on a quarterly basis.

In addition to thus amending the Complaint, Plaintiff also filed on May 15 an affidavit of William Radobenko, the current president of Plaintiff, to which three documents are attached. One is this same December 2, 1998 letter of Bories, Exhibit 4. The second is an Advanta letter to a third party, apparently offered by Plaintiff to establish that LeasX was an agent of or broker for Defendant.[4]

The third document is an undated letter from Barry Burdick, a vice president of Defendant to Plaintiff (the "Burdick Letter"). It indicated that LeasX, as an equipment leasing broker, had forwarded to Defendant a "lease application" for Plaintiff, and that Defendant had "conditionally approved" that application. The Burdick Letter further states, however, that such conditional approval was being withdrawn, though Plaintiff was offered the opportunity to resubmit the application for reconsideration.

### C. The motion

Upon these pleadings of record, Defendant moves to dismiss Count I of the Complaint, which alleges a cause of action for breach of a "valid contract for financing ... for leases in excess of $4 million," on the basis that Plaintiff has failed to sufficiently allege a valid or enforceable contract. Defendant's contention is premised upon Idaho Code § 9–505, which provides:

> **9–505. Certain agreements to be in writing.**—In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged or by his agent. Evidence, therefore, of the agreement cannot be

---

**4.** Agency is not presently at issue. *See*, n. 1, *supra.*

received without the writing or secondary evidence of its contents:

. . . . .

5. A promise or commitment to lend money or grant or extend credit in an original principal amount of fifty thousand dollars ($50,000) or more, made by a person or entity engaged in the business of lending money or extending credit.

Defendant submits that the documents relied upon by Plaintiff and attached to the Complaint constitute neither complete and enforceable equipment leases (except for Exhibit 1) nor an enforceable contract for financing. It points to the absence of complete and integrated terms, and to the absence of execution by Defendant or its purported agent.

The motion came on for hearing on June 13. After dismissing the "negligent misrepresentation" count, the Court granted the Plaintiff's motion for leave to amend the Complaint (which added the sentence set forth above to the allegations of paragraph X, and added Exhibit "4"). The Court further stated that the motion to dismiss would be dealt with as if it were a summary judgment motion since materials outside of the pleadings were being offered.[5]

Plaintiff was provided 15 days to submit additional materials on the matter, after which Defendant was provided a like 15 day period.

On June 28 Plaintiff filed an affidavit of its counsel, Mr. Paul, to which is attached a large amount of discovery material generated in this litigation, including numerous documents. Defendant filed a legal memorandum in rebuttal, but did not file any other materials.

**5.** Rule 12(b)(6) states in pertinent part:
 If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court,

## III. DISPOSITION

### A. Standards on motions to dismiss

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable here under F.R.B.P. 7012, is to test the legal sufficiency of a plaintiff's claims for relief. In determining whether a plaintiff has advanced potentially viable claims, the complaint is to be construed in a light most favorable to the plaintiff and its allegations taken as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Church of Scientology of Cal. v. Flynn,* 744 F.2d 694, 696 (9th Cir.1984). When reviewing the allegations of a complaint, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness. *See Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981). The complaint should not be dismissed for a failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of the claim which would entitle plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Jacobson v. Hughes Aircraft Co.,* 105 F.3d 1288, 1292 (9th Cir.1997). Thus, a court may properly grant a Rule 12(b)(6) motion if it is clear from the face of the complaint and judicially-noticed documents that the plaintiff cannot prevail as a matter of law.
*Stocks v. Calo (In re Calo),* 97.3 I.B.C.R. 87 (Bankr.D.Idaho 1997). *See also, Edwards v. Ellsworth, May, Sudweeks, Stubbs, Ibsen & Perry,* 10 F.Supp.2d 1131, 1132 (D.Idaho 1997). As discussed in *Schneider v. California Dept. of Corrections,* 151 F.3d 1194 (9th Cir.1998), the issue is not whether a plaintiff will ultimately prevail but whether he is entitled

the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

to offer evidence in support of the claims. It may appear on the face of the pleadings that recovery is very remote and unlikely, but that is not the test. *Id.*, at 1196, quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The key is whether or not it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir.1998).

A complaint may be subject to dismissal when its allegations indicate the existence of an affirmative defense such as the statute of frauds. 5A Wright & Miller, Federal Practice and Procedure, Civil 2d, § 1357, p. 351–58 (1990). This can occur even though generally such an affirmative defense is pleaded by answer under Fed. R.Civ.P. 8(a) and is dealt with at trial or by motion for summary judgment. *Accord, Rouker v. Richardson*, 49 Idaho 337, 288 P. 167, 169 (1930) ("Where, as here, the complaint shows upon its face that the contract is within the purview of the statute [of frauds], and the matter relied upon to take it from the operation thereof is insufficient, the statute may be invoked by general demurrer.")

Thus, while it is a rare case that calls for Rule 12(b)(6) relief, in proper circumstances it is available.

### B. Standards on statute of frauds

While there are several dozen cases from the appellate courts of Idaho [6] on the

subject of the statute of frauds, *Hoffman v. SV Co.*, 102 Idaho 187, 628 P.2d 218 (1981) sets forth most of the applicable principles, including the following.

■ Failure to comply with the statute of frauds renders an oral agreement unenforceable both in an action at law for damages and in a suit in equity for specific performance. The agreement is invalid unless that agreement, or some sufficient note or memorandum thereof, is in writing and signed by the party to be charged or his agent. In the case of a bilateral contract, both parties must sign the memorandum. 102 Idaho at 190, 628 P.2d at 221.

■ Although no particular form of writing is required, the essentials of the agreement must be contained therein. The writing must plainly set forth the parties, the subject matter, the price or consideration, a description of property covered or affected, and all essential terms and conditions of the agreement. The writing evidencing the agreement must contain all its terms, otherwise it cannot be enforced. *Id.*[7]

■ Unsigned writings can be considered or read together with a signed writing only where express reference to the unsigned writing(s) is made in the text of the signed writing. Parol proof cannot supply the link. *Id.*, citing *Blumauer-Frank Drug Co. v. Young*, 30 Idaho 501, 505 167 P. 21 (1917). Integration was also discussed in *Erb v. Kohnke*, 121 Idaho 328, 824 P.2d 903 (Ct.App.1992), where the proponent of an agreement attempted to link

---

**6.** The parties have argued exclusively Idaho law. The Court elects to follow that approach, and does so notwithstanding the fact that the only written contract, Exhibit 1, has a choice of law provision requiring use of New Jersey law unless waived by Defendant. *See*, Exhibit 1 at p. 2, ¶ 18. The present question is not one of enforcement or interpretation of this particular Caterpillar lease but rather the existence of a master lease or financing contract.

**7.** Thus, for example, the fact that the signed writing in *Hoffman* set forth the purchase price, down payment, interest rate, and re-

quirement of quarterly payments was not enough. The writing was not complete since the maturity date of the note, a point of beginning for installment payments, and the question of security for the debt were not addressed. 102 Idaho at 191, 628 P.2d at 223. *Accord, Lawrence v. Jones*, 124 Idaho 748, 750–51, 864 P.2d 194, 196–97 (Ct.App.1993)(contract must be complete, definite and certain in all material terms, or contain provisions which are themselves capable of being reduced to certainty; court found writing relied upon by plaintiff lacking as to three necessary issues.)

several documents "In the hope that deficiencies in one document [could] be overcome by the terms of another document." 121 Idaho at 333, 824 P.2d at 908. The effort failed since the documents were not referenced in the signed writing and were not integrated. *Id.*

 In regard to the specific provision of § 9–505 implicated here, the Idaho Court of Appeals has recognized that it is "the lender's promise or commitment to lend that must be in writing for enforceability. The apparent purpose of the statute is to protect banks and other businesses from claims that they made an oral commitment to lend money or grant credit and breached such commitment by failing to deliver the funds." *Rule Sales and Service, Inc. v. U.S. Bank National Association,* 133 Idaho 669, 991 P.2d 857, 861 (1999).

### C. Application of authorities to the motion to dismiss

#### 1. In regard to the pleadings

 The factual allegations of the Amended Complaint, and the documents attached to the Amended Complaint as exhibits, fall well short of meeting the statute of frauds. Those allegations and documents establish only one complete and signed contract, a single lease of a single item of equipment, the 1992 Caterpillar 950F. They do not establish any other lease of specific equipment. Nor do they establish any "master lease."

And, most critically, the documents do not establish a contract to provide $4,000,000 of financing to Plaintiff by any party, whether LeasX or Defendant. The December 2, 1998 "written commitment letter" of LeasX, Exhibit 4, which Plaintiff added by amendment to the Complaint and upon which it now most strongly relies, is insufficient to meet the test of *Hoffman.* Though it is signed by LeasX, it is not itself an enforceable contract. The commitment expressed in the letter is by its terms "conditional" and contem-

plates additional approval, commitment, and preparation of documentation.

The two signed documents, Exhibits 1 and 4, do not make express reference to any other documents establishing the existence of an enforceable contract through "Integrated writings." No writings proffered by Plaintiff through its pleadings set forth all the essential and necessary material terms of a contract to lend or provide credit of $4,000,000.

As far as the pleadings reflect, only one transaction ripened into a documented and enforceable agreement. This is the lease of the 1992 Caterpillar 950F, Exhibit 1 to the Complaint.

#### 2. In regard to documents outside the pleadings.

The search for a sufficiently complete and executed written memorandum of the alleged contract must therefore turn to the other documentation which Plaintiff provides.

While the Court on June 15 allowed additional submissions to be made, reference was specifically made to Rule 56 which was made applicable by the last sentence of Rule 12(b)(6). Rule 56(e) provides:

(e) **Form of affidavits; Further Testimony; Defense Required.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading,

but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

■ The Court must convert the motion to one for summary judgment when the parties submit and the Court does not reject material beyond the pleadings. *Fernandez v. G E Capital Services, Inc. (In re Fernandez)*, 227 B.R. 174, 179–80 (9th Cir. BAP 1998), citing *Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir.1998).[8]

■ In evaluating this motion to dismiss as one for summary judgment, Plaintiff has the burden to respond—as required by Rule 56(e)—and to establish the existence of a genuine issue of material fact. Fed.R.Civ.P. 56(c); *Anguiano v. Allstate Insurance Company*, 209 F.3d 1167, 1169 (9th Cir.2000); *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir.1998).

■ Here, a prerequisite for Plaintiff's seeking damages for breach of contract is the existence of a contract enforceable in an action at law. Where a party bears the ultimate burden of proof on an element at trial, that party must make a showing sufficient to establish the existence of that element in order to survive a motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir.2000). Lacking one element is fatal, even if material issues exist as to other

elements. *Id.; see also Fernandez*, 227 B.R. at 181, citing *Celotex*.

■ Plaintiff attempts to meet these burdens under Rule 56(c) and (e) and the case law through the affidavit of its counsel, Mr. Paul, and the documents attached thereto. But Mr. Paul's affidavit suffers from several problems when viewed in light of the requirements of Rule 56(e).[9]

The most critical is the fact that nothing establishes that Mr. Paul is or would be a competent witness as to any of the factual matters addressed in the discovery or the documentation, or that he could establish that any of the documents would be admissible into evidence. *Grzybowski v. Aquaslide 'N' Dive Corporation (In re Aquaslide 'N' Dive Corporation)*, 85 B.R. 545, 548 (9th Cir. BAP 1987) (affidavits by attorneys which do not comply with the personal knowledge requirement of Rule 56(e) cannot be used in opposition to summary judgment motion and are to be disregarded); *Foster v. AlliedSignal, Inc.*, 98 F.Supp.2d 1261, 1265–66 (D.Kan.2000) (same, as to foundation for documents attached to attorney affidavit).

■ Thus for several reasons, the Court could refuse to consider the documents attached to Mr. Paul's affidavit. Still, the Court is sensitive to the fact that Rule 12(b)(6) motions are not favored, and require the Court to liberally construe the pleadings and other materials before it and assume the veracity of a plaintiff's factual allegations (though not its legal conclusions cast as fact). The Court therefore has reviewed these additional documents in order to determine if an executed and sufficiently detailed written agreement can be found.[10]

---

**8.** Where the opponent to the Rule 12(b)(6) motion requests the court's consideration of extraneous materials, the obligation to inform that party of the burdens and duties of Rule 56 is superfluous. *Fernandez*, 227 B.R. at 180, citing *Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1533 (9th Cir.1985).

**9.** Additionally, the affidavit is used as a mechanism to place before the Court discovery requests and responses between the parties.

Under Local Bankruptcy Rule 7005.1(a), discovery "shall not be filed except upon order of a judge following a motion by a party in interest." No such motion was made, and no such order was entered.

**10.** Defendant takes a similar approach in its July 10 "Reply to Plaintiff's Response to Court's Request for Statement of Case" where, at p. 6–7, it argued that Plaintiff failed to meet the requirements of the statute of

However, after undertaking this review, the Court still cannot identify integrated writings, including a signed document which incorporates other unsigned writings by express reference, sufficient to establish an enforceable contract for financing exists. Even Plaintiff does not set identify the precise documents which compose the contract (other than insisting on the import of Exhibit 4) nor does Plaintiff articulate how those documents establish an enforceable contract within the requirements of § 9–505.

It would appear that the motion is well taken.

### D. Part performance as an exception to the statute of frauds

Plaintiff argues that the application of the doctrine of part performance prevents use of the statute of frauds as a bar to maintenance of Count I.

■■■ *Wolske Brothers, Inc. v. Hudspeth Sawmill Company,* 116 Idaho 714, 779 P.2d 28 (Ct.App.1989) stated:

> We acknowledge that in some circumstances an oral agreement may be removed from the strictures of the statute of frauds by part or full performance. This exception to the statute of frauds is grounded in equity. The exception protects a party who demonstrates reliance upon an oral contract by acts that would not have been done but for the contract. . . . Such reliance cannot be established by conduct referable to a cause other than the oral contract.

116 Idaho at 715–16, 779 P.2d at 29–30. *See also, Hinkle v. Winey,* 126 Idaho 993,

1000, 895 P.2d 594, 601 (Ct.App.1995) (the conduct must be consistent solely with the alleged contract; if the alleged part performance can be explained as consistent with some other purpose or arrangement, an enforceable oral contract is not established.) [11] *See also, International Business Machines Corp. v. Lawhorn,* 106 Idaho 194, 198, 677 P.2d 507, 511 (Ct.App. 1984).

■■■ The Idaho courts have clarified that part performance doesn't actually take the contract "outside" the statute of frauds, even though that is a common articulation. Rather, part performance is better understood and characterized as a form of equitable estoppel. *Frantz v. Parke,* 111 Idaho 1005, 1008–10, 729 P.2d 1068, 1071–73 (Ct.App.1986).

■■■ The fact that this doctrine is equitable in nature also dictates the form of the remedy. If part performance is found to apply, the remedy is not a suit for breach of contract at law but, rather, equitable relief in the form of specific performance of the contract the terms of which are provable through parol evidence. *Frantz,* 111 Idaho at 1009, 729 P.2d at 1072, citing *Tew v. Manwaring,* 94 Idaho 50, 480 P.2d 896 (1971). *See also, Wolske Brothers,* 116 Idaho at 716, 779 P.2d at 29; *International Business Mach.,* 106 Idaho at 199, 677 P.2d at 512. The nature of the remedy reflects the importance of the requirements that the performance relate solely to the alleged contract and that the alleged contract be proven sufficiently certain in all material and essential terms. There otherwise would be no way to effectuate an order of specific performance.[12]

---

frauds even if the various documents attached to Mr. Paul's affidavit were considered.

11. The court further held that the Hinkles, who were the proponents of the oral contract and the ones relying on the doctrine of part performance, had the burden of proving the contract by "clear and convincing evidence." *Id.*

12. Plaintiff argues that *Corder v. Idaho Farmway, Inc.,* 133 Idaho 353, 986 P.2d 1019

(Ct.App.1999) and *Mikesell v. Newworld Development Corp.,* 122 Idaho 868, 840 P.2d 1090 (Ct.App.1992) support the proposition that the remedy under the doctrine of part performance is not limited to specific performance of the oral contract. Neither does so. In fact, they support the contrary conclusion. So, too, does Idaho Code § 9–504 which, though referring to § 9–503, indicates that such section "must not be construed . . . to abridge the power of any court to compel the

### 1. An additional bankruptcy limitation on the exception

Assume *arguendo* that Plaintiff might establish part performance referable solely to an alleged contract providing for $4,000,000 in financing. Further assume that all essential terms of that agreement are provable with sufficient certainty. And also assume that this proof makes the alleged commitment to finance absolute rather than conditional. There is yet another impediment to relief.

▮ The contract which Plaintiff contends exists is one to provide financing. This alleged contract, if it exists, was not fully performed at the time of bankruptcy. Thus, in bankruptcy parlance, it is an "executory contract." [13]

▮ This type of executory contract appears subject to § 365(c)(2), which provides:

> (c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—
>
> . . . . .
>
> (2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor [.]

▮ The ban of § 365(c)(2) on assumption of such financial accommodation contracts is absolute, even where the nondebtor might consent. *Perlman v. Catapult Entertainment, Inc. (In re Catapult Entertainment, Inc.),* 165 F.3d 747, 753 (9th Cir.1999); *Transamerica Commercial Fin. Corp. v. Citibank, N.A. (In re Sun Runner Marine, Inc.),* 945 F.2d 1089, 1091–92 (9th Cir.1991). The Court cannot turn a blind eye toward this aspect of Title 11. Even if Plaintiff can leap the hurdles imposed by Idaho law, it at best achieves the right to seek specific performance of an alleged financial accommodation contract. That performance, however, as a matter of bankruptcy law, is unavailable to the Plaintiff as debtor in possession.

### 2. Performance of a "different" contract?

▮ Plaintiff has argued that Defendant, by virtue of the Burdick Letter, either acknowledged or ratified the agreement to provide financing, and therefore is estopped or has waived the ability to assert the statute of frauds. As the court in *Frantz* noted, "the statute of frauds is inapplicable when a contract, although not fully performed by both sides, is mutually acknowledged to exist." *Frantz,* 111 Idaho at 1008–09, 729 P.2d 1068, 1071–72 (Ct. App.1986).

The problem, of course, is that the Burdick Letter at best acknowledges that a "conditional commitment" had been made by Defendant. Perhaps Plaintiff is seeking to sue not for breach of a final, integrated and complete contract for $4,000,000 of financing but, rather, for breach of the conditional commitment. However, this "contract" is, by its terms, not a final or complete contract for financing. It is an "agreement to agree" or a "contract to make a contract." As such, it cannot be specifically enforced.

*Snyder v. Miniver,* 6 P.3d 835 (Ct.App. 2000); *Karterman v. Jameson,* 132 Idaho 910, 980 P.2d 574 (Ct.App.1999). As *Karterman* establishes, an agreement to agree, incomplete and uncertain in its terms, and which manifests the parties'

---

13. specific performance of an agreement, in case of part performance thereof." Plaintiff has not supported its contention that part performance gives it the right to sue for breach of contract at law, as opposed to a right to the equitable remedy of specific performance.

13. Executory contracts exist when "the obligations of both parties are so far unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other." *In re Young,* 214 B.R. 905, 910 (Bankr.D.Idaho 1997) (citations omitted).

intent to sign a later, formal and compete document, is unenforceable, and the remedy of specific performance is not available. 132 Idaho at 913–14, 980 P.2d at 577–78.

Thus, even if the conditional commitment of Exhibit 4 is acknowledged by virtue of the Burdick Letter, it is not sufficient to support the action at law for breach of contract as Plaintiff asserts, nor is the remedy of specific performance available. *Accord, Wolske Brothers,* 116 Idaho at 716, 779 P.2d at 30 (specific performance not available for contract unless it is complete and definite in all its material terms; business arrangement there at issue "was closer to ongoing negotiations than to a fixed contract.")

Further, even if such an acknowledgment or ratification of the conditional commitment could be viewed as a basis to estop Defendant from asserting the statute of frauds defense, it at best would provide Plaintiff a springboard to seek equitable, specific enforcement of the conditional commitment. Plaintiff still runs headlong into several impediments, including § 365(c)(2), discussed above.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the motion of Defendant under Rule 12(b)(6) to dismiss Count I of the Amended Complaint shall be granted. Defendant shall submit a proposed form of order.